IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JODY GOLDSBERRY,    )
            )
    Movant,   )
            )
  v.        )   Case No.  4:19-cv-00950-AGF
            )
UNITED STATES OF AMERICA, )
            )
    Respondent.  )

## MEMORANDUM AND ORDER

This matter is before the Court on Movant Jody Goldsberry's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  On January 28, 2016, Goldsberry entered into an open plea of guilty.  The Court accepted Goldsberry's plea, and on November 22, 2016, sentenced Goldsberry to a Guideline sentence of 120 months.

In his pro se motion under § 2255, Goldsberry asserts the following claims: (1) defense counsel was ineffective for failing to object to Court transcripts as inaccurate or incorrect; (2) defense counsel was ineffective for failing to object to the Court sentencing Movant as an armed career criminal under 18 U.S.C. § 924(e); (3) the Court erred when it failed to conduct a hearing on Goldsberry's pro se objections to the presentence investigation report and make findings regarding certain facts in support thereof; (4) Goldsberry's second guilty plea was involuntary and the result of coercion; (5) actual innocence; (6) defense counsel was ineffective "during the course of several proceedings"; and (7) the Court erred in its calculation of Goldsberry's total offense

level.  As the record before the Court conclusively demonstrates that Movant is not entitled to relief, the Court will deny Movant's motion without a hearing.

## BACKGROUND

### Criminal Proceedings

On January 29, 2013, law enforcement officers responded to 911 calls at the residence of Goldsberry's mother, who had been shot in the left arm.  Goldsberry was not present when the officers arrived at the house, but they suspected Goldsberry had fired the .45 caliber gun that injured her.

During a search of the residence, officers located six firearms,[1] several boxes of ammunition, blood spatter in the kitchen, and a spent .45 caliber shell on the kitchen floor.  On March 27, 2014, a federal grand jury charged Goldsberry with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  *See United States v. Goldsberry*, 4:14-cr-00091-AGF ("criminal case"), Crim. ECF No. 1.[2]  Goldsberry was initially represented by the Office of the Federal Public Defender until approximately August 15, 2014, when Goldsberry retained Scott Rosenblum, Adam Fein, and Michael Mettis to represent him.  Crim. ECF No. 34, 35, 36,

---

[1]     The firearms discovered were: a .22 caliber revolver in plain view on top of the refrigerator; four long guns, including a .22 caliber rifle and scope with Goldsberry's fingerprints, under the bed in the master bedroom; and a .50 caliber homemade rifle standing in the corner of the second bedroom.

[2]     All references to filings made in the underlying criminal case will be identified as "Crim. ECF No."

2

37.  The Court thereafter continued the trial setting several times, on motion of

Goldsberry, and ultimately set the case for trial on April 27, 2015.

The Court held a pretrial conference on April 17, 2015, during which the Court

addressed the Government's pending motions in limine and conducted a *Frye* hearing.[3]

Crim. ECF No. 64.  In connection with the motions related to the admissibility of

evidence under Fed. R. Evid. Rules 404(b) and 609, there was extensive discussion of

Goldsberry's prior felony convictions, including his conviction in 2007 for possession of

a loaded firearm while intoxicated.  Crim. ECF No. 66; Pretrial Conference Transcript,

Crim. ECF No. 83 at 43-44, 57-58, 76-78.   In connection with the *Frye* hearing, the

Government advised the Court of two plea offers communicated to Goldsberry's

attorneys.  In response, Goldsberry stated that he had reviewed and rejected the first

offer, but that he was unaware of the second offer.  As a result, the Court granted

Goldsberry time to confer with his attorney.  After conferring with counsel, Goldsberry

indicated he had no further questions about the offer made by the Government.   He

further represented that he had the opportunity to discuss the evidence against him with

counsel, that he was satisfied with counsel's representation, and that he understood it was

his decision as to whether to accept the offer.  Goldsberry thereafter rejected the

---

[3]      At a *Frye* hearing, the Court creates a formal record of plea offers and ensures that
defense counsel communicated these offers to the defendant as required by the Supreme
Court's holding in *Missouri v. Frye*.  566 U.S. 134 (2012) ("This Court now holds that, as
a general rule, defense counsel has the duty to communicate formal offers from the
prosecution to accept a plea on terms and conditions that may be favorable to the
accused.").

Government's second plea offer.  Before the pretrial conference concluded, Goldsberry

accused the Government's attorney of portraying himself as Goldsberry's attorney to

Goldsberry's aunt and neighbors the day before the hearing.  The Court told Goldsberry

to discuss the matter with his counsel, who could file a motion to seek some relief if

counsel believed it was warranted.  Pretrial Conference Transcript, Crim. ECF No. 83.

On April 24, 2015, the Friday before the trial, Goldsberry entered a plea of guilty

to the single-count indictment ("First Guilty Plea").  Crim. ECF No. 68, 69.  At the

change of plea hearing, Goldsberry, while under oath, confirmed he had discussed the

case, the evidence, and the plea agreement with defense counsel; he was satisfied with

defense counsel's representation; there was nothing defense counsel should have done or

that he requested them to do that they did not do; and that defense counsel had answered

all of his questions.  Change of Plea Hearing Transcript, Crim. ECF No. 84 at 9-12, 16-

17.  The Court on several occasions advised Goldsberry that it would not accept a plea of

guilty based on facts that Goldsberry did not believe were true.  However, Goldsberry

confirmed that there was nothing in the plea agreement, including the Stipulation of

Facts, with which he disagreed.  Goldsberry also confirmed that no one had threatened,

forced, or promised him anything to induce his plea of guilty.  The Court accepted the

plea, finding it contained a factual basis and was made knowingly, intelligently, and

voluntarily.

On May 20, 2015, Goldsberry filed a pro se motion seeking to withdraw his plea

of guilty, alleging actual innocence and that his counsel threatened him into entering the

plea.  On June 15, 2015, the Court conducted an ex parte discussion with Goldsberry and

4

his counsel.  It then granted Goldsberry's motion requesting that counsel be permitted to withdraw from representation and appointed Henry Miller to represent Goldsberry.

On August 11, 2015, the Court held a hearing on Goldsberry's motion to withdraw his guilty plea.  Crim. ECF No. 85.  At the parties' request, the Court continued the hearing so that they could determine what, if any, effect the intervening decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015)[4] would have on Goldsberry's classification as an armed career criminal.  Thereafter, on August 21, 2015, the Court permitted Goldsberry to withdraw his plea of guilty and reset the case for trial, despite its finding that nothing in the record suggested that defense counsel had been ineffective or had forced Goldsberry to enter a plea of guilty.  Crim. ECF No. 89.  The case was rescheduled for trial on October 28, 2016, but on Goldsberry's motion was thereafter continued to February 1, 2016.  Crim ECF Nos. 89, 92.[5]

On January 28, 2016, the Court held a final pretrial conference.  Crim ECF No. 107.  Goldsberry initially indicated that he did not wish to plead guilty.  The Court then proceeded with the pretrial conference and asked Goldsberry's appointed counsel, Mr. Miller, whether he intended to call witnesses at trial.  Mr. Miller advised the Court that Lillian Goldsberry, Goldsberry's mother, was a necessary witness.  However, Mr. Miller

---

[4]    In *Johnson v. United States*, the Supreme Court held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act (ACCA) violates the Constitution's due process guarantee.

[5]    On January 21, 2016, the Court granted Goldsberry's motion to appoint Gregory Smith as co-counsel to assist in the preparation and trial of the case.  Crim. ECF Nos. 99-100.

stated that Ms. Goldsberry may be scheduled for surgery on the Wednesday of trial.  The

following discussion ensued:

> THE COURT:      Do we know if there's any reason that it has to be on Wednesday of next week instead of Thursday or Friday of next week?
>
> MR. MILLER:     I do not, Your Honor.
>
> THE COURT:      Okay.  I would like you to have your investigator explore that issue, and assuming for the moment that it must be on Wednesday of next week, how might we handle this?  Can we take Lillian Goldsberry out of order?
>
> AUSA STEVENS:   Certainly, Judge, I offered that to Mr. Miller as soon as he learned about this this morning, informed me of it, and I told him if we need to take her out of order during the Government's case, or we need to maybe do her somewhat later than he would otherwise do in his order of witnesses, obviously that would be fine too.  I guess we just need to see how it plays out, but I understand Mr. Miller's position here and I'm perfectly willing to be flexible with that.
>
> THE COURT:      I don't know that this procedure is—if she has it on Wednesday, I don't know if that leaves her free to come to court on Thursday.
>
> MR. MILLER:     Nor do I, Your Honor. My hope would be that we could do it Monday or Tuesday.  I will find out exactly what's going on and I will keep the Court informed.
>
> THE COURT:      Monday is tough because we are just going to be picking our jury, doing our opening statements.  I mean she's kind of a tough witness to try to get on Monday, but we certainly could put her on on Tuesday.
>
> MR. MILLER:     Sounds good, Your Honor, thank you.
>
> THE COURT:      So why don't we check that out and see if we can't get that arranged, unless what she tells us is either, oh, I

6

> could go ahead and have it done on Friday or says, yes, I'm having a procedure on Wednesday, but I'll be perfectly fine on Thursday. Now, that always leaves us open to the risk that she thinks that, but it's not in fact true and that endangers, you know, that is kind of a risky course. Mr. Goldsberry has something to say. Would you like to chat with him, Mr. Miller. Mr. Goldsberry why don't you wait a minute and let your attorney come over and talk to you and then we'll go from there.

Pretrial Conference and Change of Plea Hearing Transcript I, Crim. ECF No. 209 at 6-8. Goldsberry then indicated that his mother's surgery may take place on Tuesday. After determining that her testimony would take 60 – 90 minutes, the Court indicated that "if we had to put her on on Monday, we would, and everybody would need to keep [their] examination as tight as you possibly can," unless Ms. Goldsberry advised that she would be "perfectly capable of showing up for Court on Wednesday or Thursday." *Id.* at 9.

Thereafter, the Court proceeded to discuss other pretrial matters, including the parties' plans to enter into an *Old Chief* stipulation with respect to Goldsberry's status as a convicted felon. The Court also conducted a *Frye* hearing, at which the Court discussed the previous guilty plea agreements that had been offered by the Government and confirmed with Goldsberry that the Court's recollection of the various offers was correct. Then, after a discussion between Goldsberry and Mr. Miller off the record, Mr. Miller advised the Court that Goldsberry wished to proceed with an open plea:

> MR. MILLER:  . . . So, what he and I were just discussing there is I think that Mr. Goldsberry believes there is a very substantial chance that after a trial he will be found guilty of being a felon in possession of a firearm. In order to avoid the days in trial and getting to that result that he thinks is a very likely result, Mr. Goldsberry would like to plead

7

> guilty to the count of being a felon in possession of a firearm in or about the month of January 2013, if he can do so under, it sounds like two scenarios.  One is that he doesn't have to specifically admit to the extensive facts and specific weaponry and activities that are listed in the earlier plea agreement, and two that Mrs. Goldsberry gets what he states again are her guns returned to her, all of them, except the .50 caliber rifle that we have referred to.  Mr. Goldsberry I think understands the concept of constructive possession and I think he believes that will be his undoing if this case were to proceed to trial, but maintains that those guns belonged to Mrs. Goldsberry and so she wants to get them back. . . .

> * * *

> AUSA STEVENS:   [M]y answer is as part of the plea agreement I wouldn't be willing to agree that any of the guns would be turned back to his mother or to any other agreements with this defendant.  If he's willing to plead open, that's fine.  After he pleads open and before sentencing, I'm certainly willing—Mr. Miller has been very easy to talk to in this case.  He has represented his client very thoroughly and I'd be happy to have a conversation with him about that, but as I stand here today, I'm not willing to make any promises or agreement with this particular defendant.

*Id.* at 59-63.  The Court then explained to Goldsberry in detail the ramifications of entering an open plea to the indictment, including the resulting presentence investigation report and sentencing hearing.  The Court then took a recess to give Goldsberry another opportunity to discuss the ramifications of entering into a guilty plea with his attorney and determine whether he wished to enter a plea.  *Id.* at 75.

After again speaking with Goldsberry, defense counsel advised the Court that Goldsberry intended to proceed with an open plea.  Pretrial Conference and Change of

Plea Hearing Transcript II, Crim. ECF No. 182 at 2.[6]  Thereafter, Goldsberry stated, while under oath, that he understood, among other things, his right to proceed to trial and the maximum penalties and sentencing guidelines to which he would be subjected if convicted.  *Id.* at 15, 22, 26-28.  The Court also advised Goldsberry, "You understand that with respect to your mom's medical situation we were going to make whatever accommodations might be necessary to assure that your mom could testify if you wished to go forward with the trial; do you understand that?"  Goldsberry stated that he understood.  *Id.* at 16-17.  Goldsberry then admitted to being guilty of each of the elements of the charge for which he was pleading guilty.  *Id.* at 40.  Goldsberry repeatedly confirmed that he was not pressured into entering the plea.  *Id.* at 37-38.  Thereafter, the Court accepted Goldsberry's plea, found him competent to enter the plea, determined that the plea was made "knowingly and intelligently and voluntarily," and that the plea had a "basis in fact that contains all of the elements of the offense charged in Count One of the indictment."  *Id*. at 40.

On May 4, 2016, the United States Probation Office issued its Final Presentence Investigation Report ("PSR").  Crim. ECF No. 123.  The PSR determined a base offense

---

[6]     The portion of the transcript of the proceedings that took place after the recess, related to the plea itself, was initially transcribed separately.  It was apparently filed twice and appears as Crim. ECF Nos. 138 and 182.   The portion related to the final pretrial conference and *Frye* hearing, that preceded the plea, and at which Goldsberry first indicated a desire to enter a plea, was transcribed later, and appears as Crim. ECF No. 209.  The beginning and end of each transcript identify the portion of the proceedings contained therein.  The Court believes that the fact that the January 28, 2016 proceedings are divided into two separate transcripts is the source of some of Goldsberry's assertions that the transcripts do not properly reflect the proceedings.

level under the United States Sentencing Guidelines ("U.S.S.G.") of 24 because

Goldsberry had sustained two felony convictions for crimes of violence—specifically,

two convictions for second-degree assault of a law enforcement officer.  Two levels were

added pursuant to U.S.S.G. Section 2K2.1(b)(1)(A) because "the offense involved more

than three but less than seven firearms."  *Id.* at 5.  The PSR also determined that

Goldsberry was an armed career criminal subject to U.S.S.G. Section 4B1.4(b)(3)(B) and

18 U.S.C. § 924(e) because of his prior conviction for burglary in the second degree and

the two prior convictions for assault of a law enforcement officer in the second degree.

*Id.* at 5-6.  As a result, Goldsberry's total offense level was calculated to be 33.

Goldsberry had eight prior felony convictions, and multiple misdemeanor convictions, for

a total of 20 criminal history points, placing him in criminal history category VI.  With a

total offense level of 33, and a criminal history category of VI, the advisory sentencing

guideline range was determined to be 235 to 293 months, and he was determined to be

subject to a mandatory minimum sentence of 15 years.  *Id.* at 16, 20.

On May 4, 2016, Goldsberry, through counsel, filed numerous objections to the

PSR, Crim. ECF No. 121, including: to the statement referencing that he pleaded guilty to

18 U.S.C. § 924(e)(1);  to his designation as an armed criminal offender, because he had

not been convicted of the requisite number of felonies or controlled substance offenses;

to any enhancement for possessing more than one firearm; to the statement that he lived

at the Goldman Road address listed in the report (alleging that he used it for a stable

mailing address only); to the determination that his mother was a "victim" of the crime;

and to the fact that he did not receive a reduction for acceptance of responsibility.

On July 22, 2016, the Court held a sentencing hearing.  Sentencing Hearing Transcripts, Vols. 1-A and 1-B, Crim. ECF Nos. 177, 181.  The Government presented the testimony of Travis Williams, the custodian of records for the Jefferson County 911 dispatch tapes, who confirmed that the recording of the 911 calls related to Goldsberry's case, as well as the transcripts thereof, were accurate.  The Government also called Detective Thomas Lee Morris to the stand, who testified to evidence seized from the crime scene.  Thereafter, the Court allowed Goldsberry to present the testimony of his mother out of order to accommodate her health.

After Ms. Goldsberry testified, the Government presented the testimony of Tricia Rodgers, a system support analyst for the St. Louis County Jail; Justice Center Security Officer Brad Judge; Terry "Duane" Sargent, Goldsberry's nephew; Regina Jett, Goldsberry's niece; and United States Deputy Marshal Kent Wagner.  At the end of the Government witnesses' testimony, the Court continued the hearing to allow defense counsel to interview and subpoena additional witnesses on Goldsberry's behalf.

Shortly thereafter, on August 1, 2016, Goldsberry filed another pro se motion to withdraw his guilty plea.  Crim. ECF No. 135.  In his motion, he claimed that his mother was suffering from serious medical issues and underwent a major surgery and asserted that he pleaded guilty "rather than let my mom's life be endangered" by requiring her to appear in person at a jury trial.  He also claimed that the Government accused Goldsberry's mother and aunt of witness tampering, which impacted his decision to plead guilty.  He further alleged that two witnesses at the sentencing hearing perjured themselves and that the Government misrepresented Ms. Goldsberry's medical records.

11

On August 10, 2016, the Court held a hearing on Goldsberry's motion to withdraw his guilty plea.  Motion Hearing and Continued Sentencing Transcript, Crim. ECF No. 149.  Goldsberry did not testify or offer witnesses in support of his motion to withdraw his guilty plea.  After hearing argument from the parties, the Court denied the motion. The Court pointed out that it had, on numerous occasions, stated that it would do whatever was necessary to accommodate Goldsberry's desire to have his mother testify and to accommodate Ms. Goldsberry's medical procedure.  It also noted that at no time did Goldsberry indicate that his mother's life was in danger if she testified at trial, and he was told the Court would make all possible and necessary accommodations to allow Goldsberry's mother to testify at trial, if he so desired.

The Court noted that "if Mr. Goldsberry had some concern about whether or not Ms. Goldsberry should have been permitted to testify by deposition, he had a full and fair opportunity to raise that" at the time of the guilty plea.  *Id.* at 23.  The Court reminded Goldsberry that the Court had specifically confirmed that it would make accommodations for his mother to testify, and that he had stated under oath that he did not feel any pressure to enter a guilty plea.  The Court found that Goldsberry's allegations regarding the testimony of witnesses who testified at his sentencing had no bearing on whether he should be permitted to withdraw his plea, and further found he had failed to offer support of his other allegations of witness tampering.  The Court further noted that Goldsberry's motion to withdraw his plea came approximately six months after his plea and was not filed until after he heard an entire day of testimony presented primarily by the government at the sentencing hearing.

12

After denying Goldsberry's motion to withdraw his plea, the Court then resumed the sentencing hearing, which had been continued to permit Goldsberry to present witnesses, at which time Goldsberry's attorney presented the testimony of Goldsberry's nephew, Shane Sargent.  The Court then addressed Goldsberry's objections to the PSR and directed the parties to file further briefing on the issue of whether Goldsberry's prior convictions qualified as predicate offenses for classification as an armed career criminal. The Court again continued Goldsberry's sentencing, indicating that it would "take up the defendant's objections to [the armed career criminal issue] and the other objections" raised by Goldsberry.  *Id.* at 82.

On November 22, 2016, after further briefing by the parties, the Court concluded the sentencing hearing.  Crim. ECF No. 158.   Based on the extensive testimony at the sentencing hearings, the Court overruled most of Goldsberry's objections.  While noting that the address at Goldman Road may not have been the only place Goldsberry resided, the Court found that the Government had met its burden to establish that he resided at the Goldman Road address at the time period at issue; that he had been at that address when Ms. Goldsberry had been shot; and that Goldsberry was the one who shot her.  The Court also found that the government had met its burden to establish that Goldsberry had at least constructive possession of at least three firearms, including the pistol on the top of the refrigerator, as well as the three firearms located under the bed, one of which had his fingerprints on it.  And, that he also had possessed the missing firearm with which Ms. Goldsberry was shot.

With respect to Goldsberry's prior convictions for crimes of violence, the Court held that his 2009 conviction for second-degree assault on a law enforcement officer qualified as a crime of violence, and that the problem noted by Goldsberry was simply a "typographical error" in the charging document.  *Id*. at 40-42.  However, the Court determined that Goldsberry's conviction for second-degree burglary did not qualify as a violent felony under *Johnson*, and thus, Goldsberry was not an armed career criminal. The Court also addressed and overruled Goldsberry's pro se objections.  The Court thereafter adopted an alternative guidelines calculation, filed on August 16, 2016, which assumed Goldsberry was not an armed career criminal, and resulted in a total offense level of 26.  With a criminal history score of VI, the sentencing guideline range would be 120-150 months, but was reduced to 120 months in light of the 10 year maximum penalty.  The Court then imposed a sentence of 120 months imprisonment.  The Court further stated that it would impose the same sentence even if it had found that the 2009 conviction did not qualify as a crime of violence, detailing the reasons why a 120 sentence would be the appropriate sentence in any event.  *Id.* at 56-58.

**Direct Appeal and Subsequent Filings**

Goldsberry timely appealed his conviction and sentence, arguing that the Court erred when it applied enhancements under U.S.S.G. § 2K2.1(a)(2) based on Goldsberry's previous Missouri convictions for second-degree assault on a law enforcement officer and under § 2K2.1(b)(1)(A) based on its finding that Goldsberry possessed between three and seven firearms. *United States v. Goldsberry*, 888 F.3d 941 (8th Cir. 2018).  The

14

Government cross-appealed the Court's determination that Goldsberry's second-degree burglary conviction was not a predicate offense under the ACCA.

The Eighth Circuit held that the Court did not err in finding that the offense involved possession of between three and seven firearms because "Goldsberry's knowledge of the firearms and dominion over the residence were sufficient to establish his constructive possession of the firearms found inside the house." *Id.* at 943-44. The Court declined to address Goldsberry's other challenge to the reliance on one of his prior assault convictions because this Court had "specifically noted that it would not have changed the overall sentence even had the second assault conviction been a non-qualifying offense under U.S.S.G. § 2K2.1(a)(2)." *Id.* at 944. The Eighth Circuit further held that the Government's cross-appeal was foreclosed by its recent decision in *United States v. Naylor*, 887 F.3d 397 (8th Cir. 2018) (en banc), in which it determined that a Missouri conviction for second-degree burglary does not qualify as a violent felony under the ACCA.

Thereafter, Goldsberry filed a number of pro se letters and motions requesting certain discovery materials, court filings, and transcripts. Crim. ECF Nos. 192, 194, 196-98, 200. In response, the Court directed defense counsel to facilitate arrangements for Goldsberry to access certain discovery or provide him with paper copies of the file. Crim. ECF No. 193. Defense counsel complied, and the Court confirmed with the Associate Warden at FCI Gilmer (where Goldsberry was incarcerated) that Goldsberry was able to view and access the materials upon request. Crim. ECF No. 201. The Court

then directed the Clerk of the Court to send hard copies of each of the documents from the court file requested by Goldsberry.

Finally, the Court noted that all transcripts were included on the CDs sent by defense counsel to Goldsberry.  *Id.*  On April 8 and 10, 2019, Goldsberry filed additional pro se motions with the Court seeking a transcript of the hearing conducted on July 15, 2014, and the Court ordered that the transcript be prepared and sent to Goldsberry.  Crim. ECF Nos. 202-04.

## Section 2255 Motion

On April 18, 2019, Goldsberry filed the instant motion for post-conviction relief. ECF No. 1.  He then filed several motions seeking the production of "unaltered" and "unmolested" Court transcripts and access to discovery contained on four CDs that he received from his defense attorneys.  ECF No. 8, 9.  He also sought leave to amend his postconviction motion, in which he asserted that the record in the underlying criminal case was incomplete and that he could not access pertinent discovery.  ECF No. 23.

The Court held that Goldsberry offered no evidence, other than his own statements, that the Court transcripts were inaccurate, and therefore, the Court denied his request for "unaltered" Court transcripts.  The Court did, however, receive the motion as a supplement to his existing § 2255 motion.  ECF No. 27.  The Court also granted Goldsberry's motion for an extension of time to reply to the Government's brief.  *Id.*

On February 4, 2020, Goldsberry filed his reply, reasserting that the transcripts he received were inaccurate and claiming that he sufficiently alleged ineffective assistance of counsel; that his guilty plea was involuntarily obtained through threats made by AUSA

16

Stevens; and that this Court should consider the argument that his second assault conviction was a non-qualifying offense under U.S.S.G. § 2K2.1(a)(2) because the Eighth Circuit did not address it.  In addition, Goldsberry argues for the first time in his reply that he is also "actually innocent" under the Supreme Court's holding in *Rehaif v. United States*, 139 S. Ct. 2191 (2019) (holding that, in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove that the defendant knew he possessed a firearm and knew that he belonged to a category of persons barred from possession).  On the same day that Goldsberry filed his reply, he also filed a motion to vacate or withdraw his guilty plea based on *Rehaif*'s holding wherein he argued that he is actually innocent of being a felon in possession of a firearm because the Government did not submit proof that he both knew he was a person barred from possessing a firearm and knowingly possessed a firearm.  ECF No. 29.  Although styled as a motion to withdraw his guilty plea, the motion is in effect a request for relief under § 2255.   As such, the Court will construe this motion as a supplement to Goldsberry's § 2255 motion, which mentions *Rehaif* in one of its grounds, and will consider the merits of his additional argument under *Rehaif*.

## DISCUSSION

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."   28 U.S.C. § 2255(a).  "Issues raised

and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on [§ 2255]," and the Eighth Circuit has only deviated from that general rule in cases involving convincing new evidence of actual innocence or similarly extraordinary circumstances. *See United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001).

A collateral attack pursuant to § 2255 is also not a substitute for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). Therefore, a movant ordinarily is precluded from asserting claims in a § 2255 motion that he has failed to raise on direct appeal. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir. 1987). "A defendant who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a Section 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *McNeal*, 249 F.3d at 749 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)). To show actual innocence, a defendant must produce "new reliable evidence" and "show that, in light of all the evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *United States v. Apker*, 174 F.3d 934, 938-39 (8th Cir. 1999). "In order to establish a valid claim of actual innocence, a defendant must show factual innocence, not simply legal insufficiency of evidence to support a conviction." *McNeal*, 249 F.3d at 749. The actual innocence standard is "demanding and seldom met"; as a result, the court should find it applies only in an "extraordinary case." *Peck v. United States*, No. 4:15-CV-961-ERW, 2015 WL 5518745, at *2 (E.D. Mo. Sept. 17, 2015); *Simpson v. United States*, No. 4:14-CV-01119-ERW, 2014 WL 5025828, at *3 (E.D. Mo.

18

Oct. 8, 2014).

A petitioner's ineffective assistance of counsel claim is properly raised under § 2255 rather than on direct appeal. *United States v. Davis*, 452 F.3d 991, 994 (8th Cir. 2006). In order to prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test established by *Strickland*: (1) he must show that counsel's performance was so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 687, 690, 694 (1984). Consequently, counsel is not ineffective for failing to file a motion that would not have succeeded because the petitioner was not actually prejudiced. *United States v. Johnson*, 707 F.2d 317, 323 (8th Cir. 1983).

## Claim 1: Counsel's Failure to Object to Court Transcripts as Inaccurate or Incorrect and Deprivation of Constitutional Right to Review Discovery Materials

Goldsberry first claims that defense counsel was ineffective for failing to object to the Court transcripts as inaccurate or incorrect. As the Court has previously noted, "[a] transcript certified by a court reporter 'shall be deemed prima facie a correct statement of the testimony taken and the proceedings had.'" *Hazelrigg v. United States*, No. CIV. 12-5034-JLV, 2012 WL 3129035, at *1 (D.S.D. July 31, 2012) (internal citation omitted) (quoting 28 U.S.C. § 753(b). "A defendant's bald assertion of error is insufficient to overcome the statutory presumption that the transcript is correct." *Id.*

19

Here, the Court has reviewed the transcripts at issue, and specifically the portions of the transcript Goldsberry alleges have been deliberately altered.  The Court finds Goldsberry's allegations to be completely frivolous.  The transcripts are accurate records of Goldsberry's proceedings before the Court, and he has failed to put forth any evidence that the court reporter deliberately modified any of those transcripts.  Thus, no valid objection regarding the accuracy of the transcripts could have been made by Goldsberry's defense counsel, and Goldsberry cannot establish prejudice from counsel's failure to do so.  *See Smith v. United States*, No. 04-CR-80857, 2010 WL 3070047, at *5 (E.D. Mich. June 30, 2010), *adopted by* No. 04-80857, 2010 WL 3070051 (E.D. Mich. Aug. 2, 2010) (holding that the petitioner's claim that his counsel erred by failing to object to the admission of evidence of allegedly inaccurate tapes and transcripts of wiretaps was without merit in the absence of any evidence supporting the claim); *see also Burgest v. United States*, No. 09-CIV-80899, 2010 WL 5287511, at *2 (S.D. Fla. Dec. 17, 2010) (denying without an evidentiary hearing a § 2255 motion asserting claims related to inaccurate transcripts because the petitioner failed to present any evidence to rebut the statutory presumption of a transcript's accuracy); *United States v. Zavala*, No. CR-05-0105-LRS, 2009 WL 4827084, at *6 (E.D. Wash. Dec. 4, 2009) (dismissing the petitioner's § 2255 claims against transcript preparer and the prosecutor for "inaccurate pretrial and trial transcripts" because the petitioner "merely states his contentions with no additional description or supporting facts").

Goldsberry next argues that he was unable to access discovery materials and that certain materials have been altered.   Specifically, Goldsberry alleges that he has only

been able to access 10-20% of relevant discovery because the CDs he received with discovery materials were damaged or defective.  As his only example of the "missing" discovery, he argues that the first "30-40 minutes of the start" of the January 28, 2016 pretrial conference—in which he pleaded guilty—was not transcribed or provided to him or his attorney on direct appeal.  ECF No. 1 at 4. Goldsberry argues that because his attorney was not provided with the complete record, his attorney was unable to perfect his appeal "warrant[ing] a reversal." ECF No. 30 at 3.  The Court recognizes that the court reporter initially only transcribed the second portion of the January 28, 2016 pretrial conference, which included transcription of Goldsberry's open plea, and that the first portion of the hearing (addressing matters pertaining to the trial) was not transcribed or provided to him until after the filing of his § 2255 motion.[7]  However, Goldsberry has failed to identify what information in the first portion of this pretrial conference was relevant to his appeal.

---

[7]     The Government explained the filing of the transcript as follows:

> To be clear, on January 28, 2016, the Court held a fin[al] pretrial conference, which resulted in Goldsberry entering into an open plea of guilty to the indictment. [Crim. ECF No. 107]. As requested, the court reporter initially transcribed the second portion of the hearing, which included Goldsberry's open plea. [Crim. ECF Nos. 138, 182]. After Goldsberry filed his Section 2255 motion, the United States requested that the court reporter transcribe the first portion of the hearing, which included the final pretrial conference. The transcript was filed with the Court on July 31, 2019. [Crim.  ECF No. 209]. Both transcripts were then attached as an exhibit to the United States'[s] response to Goldsberry's Section 2255 Motion and sent to Goldsberry with the response.  [Crim. ECF No. 22].

ECF. No. 25 at 2 n.1.

Moreover, there is no reason to believe that completing the transcript in this fashion affected appellate counsel's ability to perfect the appeal, as Goldsberry asserts. The attorneys who represented Goldsberry on his appeal are the same attorneys who represented him at the time of his plea.  Attorney Miller was present for the entirety of the proceedings on January 28, 2016, including the first portion that involved the final pretrial conference.  Further, the first and second pages of the transcript that was filed before the appeal make plain that the plea portion was just an "Excerpt" and that the transcribed proceedings "were had as part of the pretrial conference that was held on January 28, 2016, in open court and with Defendant present."  Crim. ECF No. 138 at 1, 2. The transcript then begins with the Court noting:  "Okay.  We have taken a break here and, Mr. Miller, have you had sufficient time to discuss the current situation with your client?"  *Id.*  at 2.  Defense counsel was therefore well-aware that the first portion of the hearing was not part of the transcript.  He could have requested that the first portion of the proceedings be transcribed, had it been relevant, which it was not.  As such, Goldsberry has not and cannot establish this had any impact on his ability to assert his appeal.

Nor is there any basis for Goldsberry's assertion that he has somehow been prejudiced by his ability to obtain discovery.  Notably, he does not claim he was denied discovery prior to his plea and sentencing.  Further, post-sentencing, the Court previously directed Goldsberry's counsel to provide him with his client file and confirmed that Goldsberry would be able to access those materials while incarcerated.  Goldsberry's

claims about being denied discovery and being provided altered materials are conclusory and without merit.  Claim 1 will be denied.

## Claim 2: Counsel's Failure to Object to the Court Sentencing Goldsberry as an Armed Career Criminal

Goldsberry next asserts that counsel was ineffective for failing to object to the Court sentencing him as an armed career criminal.  However, as noted by the Government, the Court did not sentence Goldsberry as an armed career criminal because his conviction for second-degree burglary did not qualify as a predicate violent felony offense.  Accordingly, Goldsberry's second § 2255 claim is denied as moot.[8]

## Claim 3: The Court's Failure to Conduct a Hearing on Objections to the PSR

In his third ground for postconviction relief, Goldsberry argues that the Court erred when it "would not entertain [Goldsberry's] objections" to the PSR and that he was prejudiced when the Court relied on that PSR at sentencing.  ECF No. 7.

The Court finds that Goldsberry could have raised this issue on direct appeal but did not do so.  Thus, the claim is procedurally defaulted.  As set forth above, to overcome his procedural default, Goldsberry must demonstrate cause and actual prejudice, or actual innocence.  *Reid v. United States*, No. 4:16-CV-1772-JCH, 2019 WL 6496566, at *2 (E.D. Mo. Dec. 3, 2019).

---

[8]     In his reply, Goldsberry argues that he was sentenced as an ACC criminal because, in the judgment in his criminal case, it labels the nature of his offense as "Felon in Possession of a Firearm and Ammunition - Armed Career Criminal."  Crim. ECF No. 161.  However, as described in the *Criminal Proceedings* and *Direct Appeal* sections above, the Court did not sentence him as an ACC.  Nevertheless, the Court has provided notice of its intent to amend the judgment under Rule 36, Fed. R. Crim. P., to delete the reference to "Armed Career Criminal," which was included as a result of oversight.

Even if he could establish cause – which he has not – it is clear that Goldsberry was not actually prejudiced.  The Court held a hearing on the objections to the PSR filed by defense counsel, as well as those filed pro se by Goldsberry.  In fact, the Court heard and sustained Goldsberry's first objection to the PSR, which identified an error in the PSR (specifically, that it erroneously stated he pleaded guilty to 18 U.S.C.  §924(e)(1)).  And, the Court ordered supplemental briefing and heard additional argument on Goldsberry's remaining objections.  Those objections were heard on August 10, 2016 and November 22, 2016.  Further, the Court heard Goldsberry's pro se objections during the November 22, 2016 hearing.  Accordingly, the claim has no basis, and Goldsberry cannot demonstrate actual prejudice.  And for the reasons discussed in Claim 5 below, he cannot establish actual innocence.  For these reasons, Claim 3 will be denied.

## Claim 4: Guilty Plea was Involuntary and Coerced

For his fourth ground, Goldsberry contends that his second plea, on January 28, 2016, was involuntary and was coerced by being told the Government was going to "remove [his] mother from the hospital immediately following her surgery for lung cancer; hence putting her life in danger" to testify at his trial.  ECF No. 7 at 10-11.

For a guilty plea to be constitutionally valid, it must be "voluntary" and "intelligent."  *Bousley*, 523 U.S. at 618.  A plea is not intelligent "unless the defendant first receives 'real notice of the true nature of the charge against him.'"  *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000) (quoting *Bousley*, 523 U.S. at 618).  However, a defendant who does not challenge the validity of his guilty plea on direct appeal is barred from challenging it in a collateral proceeding unless he can "demonstrate either 'cause'

24

and actual 'prejudice' or that he is 'actually innocent.'" *Id.* (quoting *Bousley*, 523 U.S. at 622).

Here, too, Goldsberry failed to raise this claim on direct appeal and therefore has procedurally defaulted his right to raise it unless he demonstrates cause and prejudice, or actual innocence. Goldsberry has not alleged cause or prejudice. Indeed, he has had several opportunities to present support for these assertions, and each time has repeatedly failed to do so. These claims were heard and denied when Goldsberry previously attempted to withdraw his guilty plea on August 1, 2016. As the Court noted at the hearing on that motion, Goldsberry had an opportunity to raise these concerns at his plea, and he did not. He thereafter had an opportunity to present evidence of his claims at the hearing, and he did not. He does allege actual innocence in the body of his § 2255 motion but, for the reasons discussed below in Claim 5, that claim cannot succeed. Therefore, because Goldsberry has not demonstrated cause and prejudice or actual innocence (for the reasons discussed below), his claim that his guilty plea was not made voluntarily and intelligently is procedurally defaulted and cannot be raised here.

Even if Goldsberry's claim was not barred, it would still fail. "The test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Wilkins v. Bowersox*, 933 F. Supp. 1496, 1516 (W.D. Mo. 1996), *aff'd*, 145 F.3d 1006 (8th Cir. 1998) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A guilty plea is voluntary if it is "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own

counsel." *Brady v. United States*, 397 U.S. 742, 755 (1970).  "[It] must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)."  *Id.* (citation omitted).

Goldsberry asserts that his plea was induced by threat and coercion because he was told that the Government would remove his mother from the hospital immediately following her surgery for lung cancer to testify as a witness at his trial.  Goldsberry contends that he pleaded guilty rather than place his mother's life in danger.

Goldsberry's assertions are wholly unsupported by the record.  In fact, the Court on several occasions discussed Goldsberry's concerns regarding his mother's health and made it abundantly clear that it would accommodate his mother for any health-related concerns.  As detailed above, during the pretrial conference that preceded the plea, the parties had agreed that the defense investigator would obtain more information regarding the nature and timing of Ms. Goldsberry's planned medical procedure, and the Court made plain that once it had that information, accommodations would be made to permit her testimony.  But before that information could be obtained, Goldsberry elected to enter into an open plea.  During the course of the plea colloquy, the Court again confirmed to Goldsberry that the Court would make whatever accommodations might be necessary to allow her testimony.  Goldsberry confirmed he understood that and persisted with his plea.  Goldsberry did not present any evidence to the Court supporting his claims that his mother was undergoing a procedure that made her unable to testify in Court, nor did he

26

submit such evidence on appeal.  And the letter from attorney Miller that he attaches as Exhibit E to his post-conviction memorandum, does not support any claim of coercion. ECF No.7-1 at 11.[9]

Further, Goldsberry's assertion that he was pressured to plead guilty is refuted by his own statements under oath, made repeatedly at the time of the plea.  *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir.1997) (holding that an accused's representations during plea-taking, such as those concerning the voluntariness of the plea, carry a strong presumption of veracity).  Specifically, Goldsberry confirmed that he did not feel or was otherwise pressured into entering the plea.  Goldsberry also waited approximately six months after his plea to file his motion to withdraw his plea and did so only after hearing the government's evidence at sentencing.  This delay belies any claim of coercion, and weighs heavily against granting the motion.  *United States v. Vallery*, 108 F.3d 155, 158 (8th Cir. 1997) (delay of four months between guilty plea and motion to withdraw plea weighed against granting the motion).  For all of these reasons, Claim 4 is denied.

## Claim 5:  Actual Innocence

Goldsberry alleges actual innocence both in connection with his claim that his guilty plea was the result of coercion (Claim 4) and as a free-standing ground in Claim 5 of his § 2255 motion.  But whether asserted as a gateway to excuse procedural default

---

[9]     To the extent Goldsberry asserts other improprieties by the prosecutor or defense counsel, or inaccuracies or omissions in the Court record, in support of his claim of coercion, as in Exhibit 1 to his Memorandum, ECF No. 7-1, the Court finds no basis in the record to support these contentions.  The Court further rejects any suggestion by Goldsberry that this Court was aware of and noted any such improprieties or record omissions, for lack of foundation.

with respect to Claims 3 and 4, or as a freestanding claim, his claims of actual innocence fail.

<u>Allegations of Insufficient Evidence</u>

Goldsberry initially contends that he is actually innocent because the Government lacked eyewitnesses that could testify to seeing him with a firearm or ammunition.  In support of this argument, Goldsberry directs the Court to "DCD 114" which he alleges is a letter "which has been left off the docket sheet" wherein unidentified witnesses wrote to the Court about AUSA Stevens threatening them with jail time if they did not lie and say that they saw Goldsberry in possession of a firearm.  Goldsberry does not attach the letter to this motion or provide the Court with any evidence of its existence.  The Court does not find that an argument aimed at the sufficiency of the Government's evidence or an unsupported and vague reference to a "missing" letter qualifies as new reliable evidence of Goldsberry's factual innocence.[10]

Further, there were multiple witnesses who testified or were prepared to present evidence regarding Goldsberry's possession of firearms.  What is more, his fingerprints

---

[10]     To the extent Goldsberry is referring to the letter that was addressed from his mother and received by the Court on March 14, 2016, his argument still fails. Crim. ECF No. 112.  In the letter—which was forwarded by this Court to Goldsberry's counsel — Goldsberry's mother alleges that AUSA Stevens engaged in impropriety in an attempt to secure Goldsberry's conviction.  However, the Court does not find this letter to be new reliable evidence of Goldsberry's factual innocence.  As stated during the November 22, 2016 sentencing hearing, this Court believes that Goldsberry's mother—either under Goldsberry's direction or of her own volition— provided untruthful testimony to the Court in an effort to prevent Goldsberry's conviction.  Sentencing Transcript II, Crim. ECF No. 180 at 28.  A letter written by an interested party—the allegations of which were never acted upon by counsel—does not convince this Court that, in light of all the evidence, it is more likely than not that no juror would have found Goldsberry guilty

were found on one of the firearms located in the residence, and this Court found that

Goldsberry in fact shot his mother on the date in question, and therefore possessed the

firearm that was missing.  In any event, it is not necessary for anyone to testify that they

saw Goldsberry with a firearm on the date alleged in the indictment, nor does it matter

whether some or even all of the firearms belonged to his mother.  As the Eighth Circuit

noted in its opinion (and defense counsel suggested at the time of Goldsberry's plea),

there is ample evidence of his constructive possession of the firearms in the residence,

which is sufficient to sustain his conviction.

Claim Under *Rehaif v. United States*

Goldsberry also mentions in Claim 5, and argues more fully in his February 4,

2020 motion to vacate his plea, that he is actually innocent under the holding in *Rehaif v.

United States*. 139 S. Ct. 2191 (2019).  In *Rehaif*, the Supreme Court held that in a

prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), "the Government must prove both

that the defendant knew he possessed a firearm and that he knew he belonged to the

relevant category of persons barred from possessing a firearm."  *Id.* at 2200.  In support

of this claim, Goldsberry asserts that there was an obligation by the Government or the

Court to expressly advise Defendant that he was "a person barred from possessing a

firearm."  He further asserts he "lacked that knowledge that [he] was a person barred by

federal law," and again argues that he did not knowingly possess a firearm.  ECF No. 29

---

beyond a reasonable doubt.

at 1-2.  He argues he is innocent because "[t]he Government did not submit proof of either requirement to convict."  *Id.* at 2.

Goldsberry's argument fails for several.  First, *Rehaif* is inapplicable to Goldsberry's case.  "Post *Rehaif*, '[c]ourts considering § 2255 motions have declined to vacate a criminal defendant's sentence when he has pleaded guilty to the offense." *Allen v. Dobbs*, No. CV 1:20-321-HMH-SVH, 2020 WL 907513, at *4 (D.S.C. Jan. 31, 2020) (quoting *United States v. Bain*, No. 5:18-029-KKC-MAS-1, 2020 WL 406682, at *2 (E.D. Ky. Jan. 7, 2020)), *adopted by* 2020 WL 901407 (D.S.C. Feb. 25, 2020).[11]  This is because the holding of *Rehaif* concerns the government's burden of proof at trial; specifically, that it must prove both that defendant knew he possessed a firearm <u>and</u> that he knew he belonged to a category of persons barred from possession.  When a defendant pleads guilty and does not go to trial, he relieves the government of its burden, making *Rehaif*'s holding irrelevant.  *See Allen*, 2020 WL 907513, at *4 ("While *Rehaif* dissects the requirements to sustain a jury conviction under § 922(g), because Petitioner pleaded

---

[11]      *See, e.g.*, *Dillon v. Warden*, No. CV 6:19-295-DCR, 2019 WL 7038262, at *3 (E.D. Ky. Dec. 20, 2019) ("[Movant] waived his right to attack the sufficiency of the evidence to sustain his conviction by pleading guilty."); *Williams v. United States*, No. 317-cr-00241-MOC-DCK-d1, 2019 WL 6499577, at *2 (W.D.N.C. Dec. 3, 2019) ("The holding in *Rehaif* does not apply to the facts of the instant case. There was no trial in Petitioner's case; Petitioner pleaded guilty to the § 922(g) charge he now challenges. The burden of proof of the Government, therefore, is not relevant."); *Thompson v. United States*, No. 4:19-CV-2310 RLW, 2019 WL 5727976 , at *4 (E.D. Mo. Nov. 5, 2019) (finding that *Rehaif* was inapplicable to the facts of movant's case because defendant pleaded guilty); *United States v. Anderson*, No. 2:10-cr-00113-LSC-JHE, 2019 WL 3806104, at *2 (N.D. Ala. July 26, 2019) ("[A] *Rehaif*-based challenge appears to be barred by the plea agreement."), *adopted by* 2019 WL 3805998 (N.D. Ala. Aug. 13, 2019).

guilty [. . .] this contention is moot." (internal citation omitted)); *Thompson*, 2019 WL 5727976, at *4 ("Because movant plead[ed] guilty to the one-count indictment and his case never went to trial, the burden of proof for the government had the case gone to trial, is irrelevant.").  Here, Goldsberry pleaded guilty to being a Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g) and § 924(a)(2).  As a result, *Rehaif* is not a source of relief in this context.

Second, even if *Rehaif* applied to guilty pleas, *Rehaif* is inapplicable because it did not announce a new rule of constitutional law made retroactive to cases on collateral review.  *See Khamisi-El v. United States*, ___ Fed. Appx.___, 2020 WL 398520, at *4 (6th Cir. Jan. 23, 2020) (denying remand to permit amendment to motion to vacate to add claim based on *Rehaif*, finding *Rehaif* to be a matter of statutory interpretation, not a "new rule of constitutional law"); *United States v. Peterson*, No. 2:17-CR-093, 2020 WL 431064, at *3 (S.D. Ohio Jan. 28, 2020), *adopted by* No. 2:17-CR-093, 2020 WL 977874 (S.D. Ohio Feb. 28, 2020) ("Motions to vacate under [§ 2255] seek collateral review and the Supreme Court did not make *Rehaif* applicable retroactively, i.e., to cases that became final before *Rehaif* was decided."); *Wright v. United States*, No. 116-cv-01080-JDB-jay, 2020 WL 718237, at *3 (W.D. Tenn. Feb. 12, 2020)  (petitioner cannot establish actual innocence under *Rehaif* because its "ruling has not been made retroactive"); *Nixon v. United States*, Case No. 4:19-CR-189-A, 2019 WL 6498088, at *3 (N.D. Tex. Dec. 3, 2019) (explaining that the Supreme Court in *Rehaif* did not announce a new rule made retroactive; rather, it merely interpreted 18 U.S.C. § 922(g) to require the government to show that the defendant knew he had the relevant status when he possessed a firearm);

31

*Moore v. United States*, Case No. 2:19-cv-02572-TLP-tmp, 2019 WL 4394755, at *2

(W.D. Tenn. Sept. 12, 2019) ("*Rehaif* did not announce a new rule of constitutional law

made retroactive to cases on collateral review.").  Because Goldsberry's conviction

became final before *Rehaif* was decided, *Rehaif* does not provide him relief in this

collateral proceeding.

Third, Goldsberry misapprehends what must now be proven on a charge of being a

felon in possession of a firearm and ammunition in light of *Rehaif*.  Goldsberry asserts

that he could not be guilty post-*Rehaif* because he was not advised and the government

did not prove that he knew he was a prohibited person barred from possessing a firearm

under federal law.  But that is not what is required under *Rehaif*.  The government is not

required to prove that a defendant knew he was prohibited from possessing a firearm; it

need only prove that a defendant knew that he belonged to the category of persons barred

from possessing a firearm.  *Rehaif*, 139 S. Ct. at 2200.  In other words, the government

must only prove that the defendant knew he was a previously convicted felon at the time

he possessed a firearm.  *United States v. Huntsberry*, ___ F.3d ___, 2020 WL 1815120, at

*8 (5th Cir. April 10, 2020); *United States v. Hollingshed*, 940 F.3d 410, 415 (8th Cir.

2019).

Here, Goldsberry does not allege he didn't know he had previously been convicted

of a felony when he possessed the firearm and ammunition, which alone causes his

*Rehaif* argument to fail.  Moreover, on this record, it is hard to see how he could assert

his lack of knowledge.  Prior to the date alleged in the indictment, Goldsberry had been

convicted of eight prior felony offenses.  He was sentenced to more than a year in prison

on at least six of those convictions, with terms ranging from a low of three to a high of

ten years.  Indeed, the record contains the certified records with respect to Goldsberry's

conviction in 2007.  The Information shows he was charged with a felony.  A formal

reading of the Information, which recites that it is a felony charge, occurred on June 18,

2007; and he was thereafter convicted of that felony.  Crim. ECF No. 142-4.  As such,

even if *Rehaif* could apply to Goldsberry's case, there is no reason to believe he could

show his ignorance of his status as a previously convicted felon.  For this reason, as well,

Goldsberry cannot show innocence under *Rehaif*.  *Huntsberry*, 2020 WL 1815120, at

\*10; *Hollinghead*, 940 F.3d at 416.

<u>Standard for Actual Innocence Claim</u>

Generally, a petitioner asserts actual innocence as "a gateway through which a

habeas petitioner must pass to have his otherwise [procedurally] barred constitutional

claim considered on the merits.  *Shlup*, 513 U.S. at 315; *see Herrera v. Collins*, 506 U.S.

390, 404 (1993).  "As for a freestanding claim of actual innocence, the Eighth Circuit has

expressed uncertainty as to whether a petitioner may assert such a claim in a habeas

petition, noting that '[t]he Supreme Court has not decided whether a persuasive

demonstration of actual innocence after trial would render unconstitutional a conviction

and sentence that is otherwise free of constitutional error.'"  *Turner v. United States*, No.

1:16-CV-00268-JAR, 2020 WL 1323037, at \*8 (E.D. Mo. Mar. 20, 2020) (quoting

*Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014)).  If such a claim did exist, however,

the Eighth Circuit explained that the threshold would be "extraordinarily high," requiring

"'more convincing proof' than the 'gateway' standard that allows for consideration of

otherwise defaulted constitutional claims upon a showing of actual innocence." *Dansby*, 766 F.3d at 816 (quoting *Herrera*, 506 U.S. 417; then *House v. Bell*, 547 U.S. 518, 555 (2006)).

In Claim 5, Goldsberry does not seek to excuse a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence. Instead, he has brought a freestanding claim of actual innocence in which he attacks the evidence presented in his case and argues that he is entitled to habeas relief under *Rehaif v. United States*.  For the reasons discussed above, Goldsberry has failed to provide new reliable evidence that meets the standard for proving a gateway actual innocence claim. Therefore, to the extent a freestanding actual innocence claim exists, he cannot meet the even "more convincing" standard of proof it would require.  Thus, Claim 5 is denied.

## Claim 6: Counsel's Ineffective Representation at Various Proceedings

Next, Goldsberry complains that he "incurred ineffective assistance of counsel during the course of several proceedings" but "cannot adequately address this argument until he receives a certified true and correct unmolested and unaltered digital audio recording" of his underlying criminal proceedings.  ECF No. 7 at 12.  However, "[v]ague and conclusory allegations are insufficient to support a claim under 28 U.S.C. § 2255."  *United States v. Lewis-Zubkin*, No. 316-cr-30011-PKH-MEF-1, 2019 WL 1550799, at *3 (W.D. Ark. Mar. 20, 2019) (citing *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986)); *see also Voytik v. United States,* 778 F.2d 1306, 1308 (8th Cir. 1985) (stating "a petition which consists only of conclusory allegations unsupported by

specifics . . . is insufficient to overcome the barrier to an evidentiary hearing on a section 2255 motion." (internal citation omitted)).

As stated previously, Goldsberry had access to full and complete transcripts, as well as relevant discovery in his criminal case.  He fails to identify any specific instances of ineffective assistance of counsel in this claim or provide the Court with any supporting facts.  Further, he stated under oath at the time of his plea that he was satisfied with the performance of counsel.  Accordingly, Claim 6 is denied.

## Claim 7: The Court Erred in Calculating the Total Offense Level

In his final claim for post-conviction relief, Goldsberry contends that the Court erroneously applied enhancements under U.S.S.G. § 2K2.1(a)(2) based on Goldsberry's previous Missouri convictions for second-degree assault on a law enforcement officer and under § 2K2.1(b)(1)(A) based on its finding that Goldsberry possessed between three and seven firearms.  These claims are identical to those raised and rejected on direct appeal.  "[I]ssues raised and rejected on direct appeal may not be re-litigated in a Section 2255 petition." *Wilhelm v. United States*, No. 4:19-CV-00180-JAR, 2019 WL 7049693, at *7 (E.D. Mo. Dec. 23, 2019) (citing *Wiley*, 245 F.3d at 752).  Accordingly, Claim 7 is denied.

## Evidentiary Hearing

An evidentiary hearing is not warranted in this case.  Most of the claims asserted were already heard by the Court during the pretrial proceedings, or in connection with his numerous motions to withdraw his guilty pleas, and he has presented nothing new regarding these claims.  With respect to any other issues, an evidentiary hearing is not

warranted in this case as "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b); *see also Guzman-Ortiz v. United States*, 849 F.3d 708, 715  (8th Cir. 2017) (holding that a district court may forego holding an evidentiary hearing before dismissing a § 2255 motion where "accepting the petitioner's allegations as true, the petitioner is not entitled to relief").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Jody Goldsberry's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence [Doc. No.1] is **DENIED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Vacate or Withdraw Plea, or Vacate Sentence and/or Conviction under *Rehaif v. United States* [Doc. No. 29] is **DENIED**.

**IT IS FURTHER ORDERED** that this Court will not issue a Certificate of Appealability as Movant has not made a substantial showing of the denial of a federal constitutional right as required by 28 U.S.C. § 2253(c)(2).

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of April, 2020.